IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

```
GREAT PLAINS CHRISTIAN RADIO,  )
INC.,                          )
                               )
               Plaintiff,      )    CIVIL ACTION
                               )
v.                             )    No.  04-2559-MLB
                               )
RAY RYAN,                      )
                               )
               Defendant.      )
                               )
```

**MEMORANDUM AND ORDER**

This case comes before the court on the following motions:

1) Ryan's motion to strike plaintiff's expert witnesses (Doc. 76), plaintiff's response (Doc. 83) and Ryan's reply (Doc. 91);

2) Plaintiff's motion in limine (Doc. 93) and Ryan's response (Doc. 104); and

3) Ryan's motions in limine (Docs. 97, 100), memoranda in support (Docs. 98, 101) and plaintiff's response (Doc. 103).

To the extent it can with the information before it, the court will briefly rule on each motion. The court cautions the parties, however, that nothing in this Order will preclude the admissibility of the excluded evidence if it otherwise becomes relevant at trial. See Turley v. State Farm Mut. Ins. Co., 944 F.2d 669, 673 (10th Cir. 1991) ("The better practice would seem to be that evidence of this nature . . . should await development of the trial itself.").

**I.   Ryan's Motion to Strike**

Ryan has filed a motion to strike the expert testimony of all three experts retained by plaintiff. In reaching its decision on Ryan's motion to exclude plaintiff's experts, the court has considered Fed. R. Evid. 403, 702 and 703, Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999) and applicable Tenth Circuit decisions. The parties agreed that it was not necessary to take testimony from the witnesses.

"Rule 702 sets forth the standard for admission of expert testimony," U.S. v. Fredette, 315 F.3d 1235, 1239 (10th Cir. 2003), and assigns "to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed. 2d 469 (1993). Rule 702 provides that

> [i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The standards embraced by Rule 702 and Daubert apply equally to scientific testimony and other testimony of a technical nature. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-48, 119 S. Ct. 1167, 1174, 143 L. Ed. 2d 238 (1999).

Plaintiff has retained three expert witnesses to opine about the alleged defects in the tower, specifically the leg to flange welds. Ryan's first overall objection to all three witnesses is that the evidence is not relevant to the issue of notice. In order to succeed

-2-

on its claim for fraudulent concealment, plaintiff must set forth by clear and convincing evidence:

> (1) that defendant had knowledge of material facts which plaintiff did not have and which plaintiff could not have discovered by the exercise of reasonable diligence; (2) that defendant was under an obligation to communicate the material facts to the plaintiff, (3) that defendant intentionally failed to communicate to plaintiff the material facts; (4) that plaintiff justifiably relied on defendant to communicate the material facts to plaintiff; and (5) that plaintiff sustained damages as a result of defendant's failure to communicate the material facts to the plaintiff.

Great Plains Christian Radio, Inc. v. Central Tower, Inc., 399 F. Supp.2d 1185, 1194 (D. Kan. 2005).

In order to establish the first element, plaintiff must show that Ryan had knowledge of material facts (the defects in the tower) that plaintiff could not have discovered. Testimony by experts to show that the tower had welding defects is relevant to establish the fact of the defects. The testimony is also relevant to establish that plaintiff sustained damages as a result of Ryan's failure to disclose those facts. The court is not aware, however, that the experts are able to offer any evidence as to Ryan's knowledge of the defects. The parties are directed to submit proposed limiting instructions that clarify the purpose of the expert testimony.

Next, Ryan specifically objects to the methodology of all three experts.[1]

**A.   Richard Roberts**

Roberts has stated the following opinion in his report:

> The leg to flange joints in the Great Plains Christian Radio, KJIL, antenna tower located in Meade, Kansas were

---

[1] Ryan does not object to any of the experts' qualifications.

>    defective in both design and manufacture.
>
>    The drawings showing the leg to flange weld joint for the Great Plains Christian Radio, KJIL, antenna tower located in Meade, Kansas as a 5/16 inch and a 1/4 inch fillet weld provided a physical impossibility. This, coupled with the lack of welding process information on the drawings, makes the tower drawing package defective.

(Doc. 76, exh. C).

Ryan asserts that Roberts' opinions should be stricken since his report is labeled as preliminary and his opinion does not explain the effect of the missing welds on the overall tower strength. Since Roberts states in his deposition that he has not made an assessment of the effect of the strength of the tower and that assessment was performed by other experts, then any opinion as to the effect of the missing welds on the tower would be outside the scope of his report. (Doc. 83 at 31). Based on plaintiff's response, it does not appear that plaintiff intends to offer any opinion by Roberts as to the effect of the missing welds. Ryan's reply states that if Roberts' opinions are limited to the stated opinions and that Roberts will not opine on the effect of the missing welds then Ryan will not object to his testimony.

Accordingly, Roberts will be permitted to testify as to his opinions contained in his report and as testified to at his deposition,[2] with the exception of missing welds.

### B.   Lawrence Penner

Ryan asserts that the opinions of Penner should be excluded since

---

[2] The trial testimony of every expert will be so limited. In anticipation of objections to the opinions of experts, counsel presenting the expert must be prepared to identify with specificity, the portion of the report and/or deposition where the opinion was presented.

-4-

Penner has failed to provide a scientific analysis in support of his opinion that there is a 40% reduction in the weld strength and failed to state any discernable opinion on the transition section.

Penner is a licensed professional engineer who has over twenty-five years experience in the tower industry. Penner has testified as follows with regard to the weld strength:

> Penner: There was supposed to be the circumference of 9/16 worth of weld. There's now a circumference of 5/16 worth of weld.
>
> Attorney: So you just - 5/16 plus a quarter inch?
>
> Penner: If you were – if I was designing that weld, that splice, in order to figure out the capacity of it, you take the total length of weld by the size of weld and multiply it by the capacity of a unit length of weld, a unit size of weld, and that is your capacity. So if you take away all of the quarter-inch weld and just leave all of the 5/16 weld, it's a mathematical relationship to how much it's reduced by over the original design.

(Doc. 83, exh. 5 at 69-70).

Ryan asserts that this approach is not scientific and does not necessitate expert testimony. The court disagrees. While the result may be a somewhat simple mathematic equation, Penner's explanation, based on an inspection of the tower and the drawings, will be helpful to the jury, is based on a reliable foundation and is clearly relevant.

Ryan also asserts that Penner's opinion lacks probative value since he does not opine on the effect that the 40% reduction in strength has on the tower. This opinion, however, will be offered by James Walker.

Ryan also seeks to exclude Penner's opinion on the transition section on the basis that a complete structural analysis of the

-5-

transition section was not performed.  Penner has opined that the transition section leg members have several defective welds.  Based on this finding, Penner recommended that a complete structual analysis be completed.  Penner, however, was not asked to complete the analysis and the analysis was not performed.  This fact goes to the weight of Penner's testimony, not to the foundation for admissibility of his testimony.  Clearly, his opinion as to the defective welds in the transition section is relevant.

Lastly, Ryan asserts that Penner's testimony is inadmissible since Penner did not actually climb the tower.  Dan Childs, an individual who was qualified to climb the tower pursuant to OSHA standards, climbed the tower while Penner remained at the base. Childs inspected the tower, took notes, and relayed the information to Penner.  Ryan has not supplied the court with any evidence that this practice by Penner is not employed by other engineers.  The fact that Penner did not visually inspect all of the welds goes to the weight of the testimony and not to its admissibility since an expert "may rely on facts outside the record and not personally observed, but of the kind that experts in his or her field reasonably rely in forming opinions."  See Ramsey v. Culpepper, 738 F.2d 1092, 1101 (10th Cir. 1984).

### C. James Walker

Ryan asserts that the opinions of Walker should be excluded since his opinion that the tower is overstressed is not relevant and his conclusion that there is a 49% reduction of the weld strength is logically flawed, unsupported by scientific methodology and fails to account for other factors.

First, Walker's opinion that the tower is overstressed is relevant to the issues. Walker has determined that certain portions of the tower are unable to sustain 85 mile per hour winds as required by EIA standards. Plaintiff must establish that the tower was defective and that Ryan's failure to disclose the defects harmed plaintiff.

Second, Ryan has failed to establish how Walker's opinion is unsupported by scientific methodology. Ryan attaches an affidavit of his expert, James Cohen, to support Ryan's position. Cohen states that he does not discern how Walker came to his conclusion that the overall tower strength has been reduced by 49% and that Walker has not provided an analysis as to how the load is transferred from the weld. These criticisms go to the weight of Walker's testimony and not the admissibility. Ryan has failed to establish how Walker's mathematical formula is not supported by scientific methodology.

Next, Ryan asserts that Walker does not identify how the load is transferred to and through the welds and that Walker has failed to identify why the loads must tolerate a leg load of 216,000 lbs. Ryan's expert explains that the tower is designed so that the compression does not go through the welds. These areas can be explored through cross examination. Again, Ryan's objections to Walker's testimony go to the weight of the evidence and not its admissibility.

Finally, Ryan states that Walker's opinion should be excluded since he relied on Penner's report. Since the court has determined that Penner's opinions are admissible, Walker may rely on them.

The court concludes that plaintiff's experts' opinions are

-7-

sufficiently reliable and will help the jury for the limited purpose for which they are received, i.e. to understand whether defects existed. Accordingly, Ryan's motion to exclude plaintiff's experts' testimony (Doc. 76) is denied.

## II. Ryan's Motions in Limine

A. Ryan's financial condition, the sale of Central Tower, Inc. and Ryan Construction, Inc., and the factors to be considered by the Court in accessing punitive damages.

Ryan asserts that this evidence is inadmissible since the court, not the jury, determines the amount of punitive damages. The court disagrees. The court is persuaded by Judge Brown's opinion in <u>Vance ex rel. Wood v. Midwest Coast Transport, Inc.</u>, 314 F. Supp.2d 1089, 1091-93 (D. Kan. 2004).[3]  The court agrees with the analysis in the opinion and sees no reason to restate it here. Accordingly, should the jury determine that punitive damages are warranted in this case, the parties will be able to present evidence of the financial condition of Ryan. The court will bifrucate the proceedings to ensure that Ryan will not be prejudiced by the amount of the sale and his financial status.

Ryan also seeks to prohibit the admission of any evidence of the sale of Central Tower and his profits from that sale. The court will allow plaintiff to introduce evidence of the sale and the negotiations that allegedly occurred at the time of the April 2000 letter, but not the amount, during the first phase of the trial in order to establish whether Ryan may have had a motive not to disclose relevant information to plaintiff. Once again, the parties are directed to

---

[3] The undersigned judge tried the <u>Vance</u> case.

submit limiting instructions regarding the evidence.

B. Ryan's duty to disclose defective welds because he had better access to material information.

Plaintiff asserts that Ryan's motion should be denied since "Ryan's knowledge and how he acquired such knowledge is relevant to the duty to disclose." (Doc. 103 at 5). The admission of evidence, if any, which Ryan had a duty to disclose will be governed by the standards set forth in Chief Judge Lungstrum's order, pp. 16-18. The parties are directed to submit limiting instructions pertaining to this evidence.

C.  Ryan's duty to confess fault.

Plaintiff has the burden to establish that Ryan had a duty to inform plaintiff of the defects that Ryan had actual knowledge of and that he intentionally failed to do so. Plaintiff has not asserted that Ryan had a duty to confess fault and, therefore, any evidence based on such a duty would not be relevant.

D.  Chief Judge Lungstrum's memorandum and order. (Doc. 62).

Plaintiff does not contest the motion to exclude the order.

E.  Marketing material issued by Central Tower, Inc. prior to Ryan's letter.

Plaintiff asserts that the admission of Central Tower marketing materials from 1992 and 1997 is relevant to Ryan's credibility, knowledge of the defect, lack of knowledge of plaintiff, Ryan's duty to disclose and plaintiff's reliance on Ryan. Both motions, however, have failed to attach the materials. The court cannot rule on this motion without reviewing the evidence that Ryan seeks to exclude.

F.  Ryan's responses to plaintiff's request for admissions.

Ryan's motion to exclude this evidence is sustained. Fed. R.

-9-

Evid. 403.

    G.   Evidence regarding other towers.

Plaintiff seeks to introduce evidence of six towers constructed by Central Tower that allegedly had similar problems with the leg to flange welds. In determining whether evidence of other towers is admissible, the court must utilize the "substantial similarity" test. Smith v. Ingersoll-Rand Co, 214 F.3d 1235, 1246 (10th Cir. 2000). In Smith, the Tenth Circuit held that the evidence of other incidents "require[s] a high degree of similarity when . . . offer[ed] . . . to prove causation . . ., but . . . a lesser degree of similarity when evidence [] is offered to show the defendant had notice of potential defects in its product." Id. at 1246-47. "Any differences in the accidents not affecting a finding of substantial similarity go to the weight of the evidence" when offered for the purpose of establishing notice. Four Corners Helicopters, Inc. v. Turbomeca, S.A., 979 F.2d 1434, 1440 (10th Cir. 1992). In this case, plaintiff is attempting to introduce this evidence to establish that Ryan had notice of the defects of the leg to flange welds.

        1. Clinton, Louisiana tower

The Louisiana tower collapsed in November 1992. This tower had an identical design of the leg to flange welds. Plaintiff intends to present evidence from Wayne Dowdy, the owner of the tower, that an investigation after the collapse revealed poor welding at the leg to flange connection. Ryan was provided with the results of the investigation. The court finds that the Louisiana tower incident is substantially similar to plaintiff's alleged problems with its tower. Although plaintiff's tower is still standing, evidence from the

-10-

Louisiana tower is relevant to establish that Ryan had notice of a potential defect at the leg to flange weld.

Ryan asserts that since the incident occurred eight years before the 2000 letter it is too remote to establish notice. Ryan cites both Hicks v. Six Flags over Mid-America, 821 F.2d 1311, 1315-16 (8th Cir. 1987) and Wright v. CSX Transportation, Inc., 375 F.3d 1252, 1260 (11th Cir. 2004) to support his position. Both of those circuits held that an incident must not be too remote in time to be admissible. See Hicks, 821 F.2d at 1315 ("Evidence of prior accidents is inadmissible unless the proponent shows that the accident was sufficiently similar in time, place or circumstances to that in the case at bar."); Wright, 375 F.3d at 1260 ("Evidence of a similar past occurrence may be introduced if the conditions of the past incident are similar enough to those of the current incident and if the past incident was not too remote in time.") The Tenth Circuit standard, however, does not include a consideration of time. In fact, the Tenth Circuit has held that evidence that a company was aware of a problem as early as twenty years prior to the plaintiff's accident was admissible to demonstrate notice. See Bitler v. A.O. Smith Corp., 400 F.3d 1227, 1240 (10th Cir. 2004).

Ryan's motion to exclude evidence of the Louisiana tower is overruled.

### 2.   Morehead, Kentucky tower

This tower collapsed during construction on March 4, 2000. Plaintiff intends to offer evidence of this collapse to demonstrate Ryan's notice of the alleged defects of the leg to flange welds at the time of the letter Ryan sent in April 2000.

The Kentucky tower collapse was the subject of litigation, which ultimately made it to the Sixth Circuit Court of Appeals. One Beacon Ins. Co. v. Broad. Dev. Group Inc., 2005 WL 2077499, 147 Fed. Appx. 535 (6th Cir. Aug. 29, 2005). The court's recitation of facts states that Ryan sent a Joe Mooney to the site of the collapse in June 2000 and that "Mooney also gave a report to Ryan stating that one of the legs had snapped 'at a support pad right where we had problems with undercut.' 'Undercut' was one of the problems Mooney had identified in the welds back in 1999." Id. at *2. Such evidence may (or may not) be relevant to Ryan's knowledge of weld problems in April 2000. Plaintiff is directed to submit a written proffer of Mooney's testimony. The court will withhold its ruling until the proffer is reviewed.

### 3. KIRX and Bott Radio tower

Plaintiff asserts that both of these towers had identical leg to flange weld connections as its tower and that both towers have developed cracked welds substantially similar to plaintiff's tower. Plaintiff intends to introduce testimony from witnesses regarding the problems. Plaintiff, however, has failed to establish the time frame in which these problems occurred and at what time Ryan was notified of the problems. Ryan asserts that he was unaware of any problems with these two towers until after the April 2000 letter. Since plaintiff has failed to establish that Ryan's notice of these events occurred prior to his April 2000 letter, Ryan's motion to exclude the evidence of the KIRX and Bott Radio tower is sustained. See Julander v. Ford Motor Co., 488 F.2d 839, 845-46 (10th Cir. 1973).

### 4. Michigan and Virginia towers

Again, plaintiff has failed to establish that these tower incidents were substantially similar to plaintiff's tower. Plaintiff simply states that "all of the evidence of the other towers shows notice, intentional conduct and concealment by Ryan." Doc. 103 at 20. Ryan's motion to exclude the evidence of the Michigan and Virginia towers is sustained.

### III. **Plaintiff's Motion in Limine**

A. Testimony and Exhibits seeking to collaterally attack the Jury Verdict of March 19, 2004, in the United States District Court for the Eastern District of Kentucky, One Beacon Insurance Co. v. Broadcast Development Group, Inc., CV 02-285. The motion is sustained.

B. Joe Mooney characterized as "Lazy Joe"

Plaintiff seeks to exclude evidence that one of its witnesses, Joe Mooney, was referred to as Lazy Joe during his employment with Central Tower. Ryan asserts that this evidence will be utilized to rebut the inference by plaintiff that Ryan told Mooney to quit inspecting the welds. Ryan proffers this evidence for the purpose to establish that Mooney did not accomplish his assigned tasks but was repeatedly doing other tasks, i.e. inspecting welds.

Plaintiff's motion is sustained as to the moniker "Lazy Joe." Fed. R. Evid. 403.

C. Ernie Jones' Testimony and Exhibits of other towers

Evidence of other tower designs and testimony regarding other towers is not relevant to the issues in this case, except as allowed in this order.

D. Plaintiff's financial summaries

Ryan has withdrawn this exhibit.

E.   Tower collapse reports of Scott Smith

Plaintiff seeks to exclude the testimony and reports of Scott Smith on the basis that Ryan failed to designate Smith as an expert. Smith prepared a report after the collapse of the Clinton, Louisiana tower in 1993. Ryan intends to offer Smith's testimony and report for the purpose of demonstrating that Ryan did not have knowledge that the collapse was due to a faulty leg to flange weld. Smith's testimony and report are based on his investigation of the Louisiana tower. Smith will not offer any testimony as to whether plaintiff's tower was defective, but rather will testify that the installer of the Louisiana tower, Richard Bell, admitted that the collapse of the Louisiana tower was a result of pulling the wires with a pick-up truck and Bell's concern of insurance. Ryan is directed to file a short brief explaining how this obvious hearsay evidence will be admissible.

## IV.  CONCLUSION

The parties are reminded that this is not a products liability case. Evidence regarding defects is relevant only to Ryan's knowledge, if any, at the time of his April 2000 letter. The court will not revisit or entertain arguments regarding Chief Judge Lungstrum's November 8, 2005, Memorandum and Order. (Doc. 62).

IT IS SO ORDERED.

Dated this   19th   day of July 2006, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE